UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DANIEL J. SCHLICKSUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-cv-1208 |
| ) | |
| CATERPILLAR, INC., DAVID B. BURRITT, ) | |
| ALICE BARBOUR, ROBIN D. BERAN, ) | |
| JAMES B. BUDA, DOUGLAS R. ) | |
| OBERHELMAN, and EDWARD J. RAPP, ) | |
| ) | |
| Defendants. ) | |

### ORDER

Now before the Court is Defendant Caterpillar, Inc.'s ("Caterpillar") Motion for Summary Judgment. For the reasons set forth below, the motion [#28] is DENIED.

### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, as the claim asserted in the Complaint presents a federal question under the Sarbanes-Oxley Act, 18 U.S.C. § 1514(A).

### BACKGROUND

Caterpillar has employed Daniel Schlicksup ("Plaintiff") since 1992. Plaintiff has a Bachelors degree in finance, a Juris Doctor, and an LL.M. in Taxation. During his time at Caterpillar, Plaintiff helped establish a European tax department, managed the corporate human resources division, and in March 2005, began working as a Global Tax Strategy Manager. Caterpillar ranks positions according to salary grades ("SG"). When Plaintiff's took the tax manager position, it was SG 30. Around August 2007, Caterpillar downgraded the tax manager position to SG 29, but Plaintiff entered into a two-year agreement with Caterpillar that allowed

1

him to continue receiving SG 30 compensation for that period. On August 26, 2008, Plaintiff attended a meeting where Alice Barbour ("Barbour"), a human resource manager, offered him a new Information Technology ("IT") position with the Global Information Services Division ("GIS"). John Heller ("Heller"), the Chief Information Officer, also attended the meeting. Barbour told Plaintiff that he was reassigned and could not remain in his current position. Plaintiff transferred to the new position and received SG 30 compensation. Plaintiff asserts that on November 2, 2009, his supervisor informed him that he could not work in tax or finance.

In addition to using salary grades, Caterpillar ranks employees with performance ratings and potential assessments. Performance ratings are given on a scale from 1 to 5. 1 is the best rating. On this scale, an employee with a 2 rating performed notably. Under the Talent Management System ("TMS"), employees are assessed according to whether their potential indicates they should be transferred or promoted. The system has at least three categories: P, K, and L. P means that the employee should be promoted. K means that the employee is well placed in his or her current position. L means that a lateral transfer would benefit the employee. In both 2007 and 2008, Caterpillar gave Plaintiff a performance rating of 2. For both years, plaintiff also received a TMS assessment of L.

Based on their rankings, employees with salary grades of 26 or higher can receive stock option awards. These awards are determined by: "(1) the standard Black-Scholes equity award for the employee's salary grade and home country;" (2) a formula adjustment based on performance and TMS ratings; and (3) "an overall division adjustment factor." (Def's Mot. Summ. J. 6). The division adjustment factor prevents Caterpillar from awarding more stock options than are available. In 2007, Plaintiff received 2,104 nonqualified stock options and 526 restricted stock options. In 2008, Plaintiff received 2,263 non-qualified stock options and 556 restricted stock options. On March 2, 2009, Plaintiff received 3,252 stock appreciation rights and 813 restricted stock units.

Since 2006, Plaintiff's employment has been full of conflict. After researching the Economic Substance Doctrine for work in 2006, Plaintiff became concerned that one of Caterpillar's structures illegally avoided U.S. taxes. In 2007, Plaintiff informed Robin D. Beran ("Beran"), the Director of Global Tax and Trade in Caterpillar's GF&SSD, of his concerns. When Beran did not pursue the issue to Plaintiff's satisfaction, Plaintiff contacted David Burritt ("Burritt"), Caterpillar's Chief Financial Officer. Plaintiff also met with James Buda ("Buda"), Caterpillar's General Counsel, about this issue. Buda directed Plaintiff to the Ethics Office where Plaintiff filed a complaint. The Ethics Office later told Plaintiff that they had closed the matter and that there was no appeal. Plaintiff continued to discuss the transactions with Beran, but in 2008 contacted Officers Edward Rapp ("Rapp") and Douglass Oberhelman ("Oberhelman") in the hopes that they would be more receptive to his allegations. Rapp and Oberhelman did not respond to Plaintiff and turned his complaint over to the Ethics Office. Defendants do not dispute or affirm any of the allegations in the previous paragraph.

**DISCUSSION**

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec.

Indus Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex Corp., 477 U.S. at 324. Evidence "based on rumor or conjecture" cannot "ward off summary judgment." Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989). This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. Anderson, 477 U.S. at 249; Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

### Plaintiff's Sarbanes-Oxley Transfer Claim

The Sarbanes-Oxley Act protects whistleblowers from employer retaliation. 18 U.S.C. § 1514A prohibits an employer from "discharge[ing], demot[ing], suspend[ing], threaten[ing], harass[ing], or in any other manner discriminat[ing] against an employee in the terms and conditions of employment." 18 U.S.C. § 1514A. Under the Sarbanes-Oxley Act, an employee can blow the whistle by lawfully providing information, causing information to be provided, or assisting an investigation regarding "any conduct which the employee reasonably believes constitutes' mail fraud, bank fraud, securities fraud, or a violation of any rule or regulation of the SEC, or any federal law relating to fraud against shareholders, when the information or assistance is provided to a person with investigatory authority." Harp v. Charter Communications, Inc., 558 F.3d 722, 723 (7th Cir. 2009) (citing 18 U.S.C. § 1514A(a)). In order to prevail under the Sarbanes-Oxley Act, the plaintiff must prove by a preponderance of the evidence that "(1) [he] engaged in protected activity; (2) the employer knew that [he] engaged in the protected activity; (3) [he] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. . . ." Id. (citing Allen v. Administrative

4

Review Board, 514 F.3d 468, 475-76 (5th Cir. 2008)).  If the plaintiff satisfies the burden, then it shifts, and the employer must show by "clear and convincing evidence" that the employer would have taken the same action regardless of the plaintiff's "protected behavior." Id. (citing Allen v. Administrative Review Board, 514 F.3d 468, 475-76 (5th Cir. 2008)).  This is an objective standard, and the plaintiff's belief should be "evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." Id. (citing Allen v. Administrative Review Board, 514 F.3d 468, 477 (5th Cir. 2008)).

To determine whether an employee suffered an "unfavorable personnel action," Courts apply the adverse employment standard used in Title VII retaliation claims. See Allen v. Administrative Review Board, 514 F.3d 468, 476 n.2 (5th Cir. 2008).  Under the Title VII standard, an employment action is adverse if it would "dissuade a reasonable worker from filing a charge." Thomas v. Potter, 202 Fed. App'x. 118, 119 (7th Cir. 2006).  Although this is an objective test, "context matters." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (7th Cir. 2006).  A schedule change may not be material to most employees but might be an adverse action if the employee is a parent with young children. Id.  While refusing to invite an employee to lunch would not normally be an adverse employment action, it could be if those lunches "contribute significantly to the employee's professional advancement. . . ." Id. Therefore, to prove an unfavorable personnel action, Plaintiff must show that the employer's action might dissuade a reasonable person in the employee's situation. See id.

In its motion for summary judgment, Caterpillar asserts that no reasonable person in Plaintiff's position would have been dissuaded from filing a complaint because he did not lose any compensation, privileges, or benefits as a result of his transfer.  In support of this contention, Caterpillar cites to Lucero v. Nettle Creek.  Caterpillar is correct that Lucero court twice notes that the plaintiff had not lost pay, benefits, or privileges with her reassignment, but this statement is not the basis for the Court's decision. Lucero v. Nettle Creek School Corp., 566

F.3d 720, 727-29 (7th Cir. 2009). The Court, instead, focused on the fact that the assignment "fell within the same job description" and that the plaintiff's duties were not objectively less desirable. Id. The Court emphasized that Lucero taught the "same academic subject in the same building and under the same conditions." Id. at 729. The Seventh Circuit held in another Title VII case that "[e]mployment decisions are adverse if a nominally lateral transfer 'significantly reduces the employee's career prospects by preventing [him] from using [his] skills and experience, so that the skills are likely to atrophy and [his] career is likely to be stunted." LaFary v. Rogers Group, Inc., 591 F.3D 903, 907 (7th Cir. 2010) (citing Nichols v. S. Ill. Univ.--Edwardsville, 510 F.3d 772, 780 (7th Cir.2007)); see also O'Neal v. City of Chicago, 588 F.3d 406, 410 (7th Cir. 2009). Consequently, that Plaintiff's "compensation increased while his salary grade, performance rating and potential assessment remained the same," (Def's Mot. Summ. J. 2), is not dispositive; a materially adverse action may still have occurred within the "constellation of surrounding circumstances." Burlington, 548 U.S. at 69.

To prove that he suffered an adverse employment action despite the financial advantage of his transfer, Plaintiff contends that Caterpillar's actions limited his career prospects. (Pl's Resp. to Summ. J. 6). The Seventh Circuit previously held that an action leading to a loss of "career prospects" can be an adverse employment action. Nagle v. Village of Calumet Park, 554 F.3d 1106, 1116 (7th Cir. 2009). In his declaration, Plaintiff writes that on November 2, 2009, his supervisor told him that he could not work in tax or finance. (Pl's Decl. 8). This is a declaration based on "personal knowledge" and, consequently, can provide sufficient evidence to ward off a motion for summary judgment. Palucki, 879 F.2d at 1572. Caterpillar counters that even if Plaintiff were limited to IT, he fails to establish that this limitation had an objectively negative impact on his career. Caterpillar contends that Plaintiff cannot show the alleged banishment harmed his career prospects because: 1) Plaintiff previously held positions outside of the finance and tax departments that did not limit his career; 2) Plaintiff offers no proof that there are fewer IT positions than tax and finance positions; 3) Plaintiff does not show that he would

6

otherwise be eligible for a new position.  Although the basis for their counterarguments is correct, Caterpillar fails to appreciate that Plaintiff claims that he was not only transferred to an ill-suited department but that he was banished completely from the finance and tax departments.

Caterpillar is correct that Plaintiff's claim that there are fewer SG 29+ positions lacks evidentiary support.  However, it does not matter if Plaintiff can prove that there are fewer 29+ IT positions.  Regardless of the number of IT positions available or whether Plaintiff is eligible for a promotion, a banishment from the finance and tax departments would still leave Plaintiff with fewer potential positions than he would have had if those career paths were open.  Thus, it is an issue of fact whether or not such a banishment would deter a reasonable person in the Plaintiff's situation. See Thomas, 202 Fed. App'x. at 119.

Plaintiff also attempts to prove that the transfer was an adverse employment action by contending that he does not have the experience necessary to succeed in IT because his education and employment history make him suited for a career in finance and tax, not computers. (Pl's Resp. to Summ. J. 6).  In response, Caterpillar asserts that Plaintiff's contention is nothing but paranoia and cites to a Title VII discrimination case.  In the discrimination case, the Court held that the claim that an employer transferred an employee in the hopes that he would fail at his new job was nothing more than "an exceedingly improbable plot" and could not survive summary judgment without additional evidence. Palucki, 879 F.2d at 1571.  There is, however, other case law on point.  A Title VII retaliation case, while not allowing adverse employment actions to spring from personal preference, emphasized the importance of whether an employee's duties are the same after the transfer. See Lucero, 566 F.3d at 729.  If the duties and responsibilities are the same, the obvious conclusion is that the new assignment cannot be objectively worse. Id.  However, each action must be examined in the case's particular context. Burlington, 548 U.S. at 69.

In this case, Plaintiff was transferred from the tax department to an IT position. This is a different field, in a different place, under different conditions. Caterpillar's assertion of paranoia and improbable plots is exaggerated under the circumstances. This is not merely a question of personal preference. It is a question of whether a transfer from the type of position an employee spent twenty years and three degrees in preparation for to a field that he had almost no experience in could dissuade a reasonable employee. Another circuit has held that similar transfers could objectively dissuade an employee from acting. See Moore v. City of Philadelphia, 461 F.3d 331, 348 (3rd Cir. 2006) (holding that "a reasonable jury could conclude that a lateral transfer from the district where a police officer had earned goodwill and built positive relations with the community over time is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad."). The Court adopts that reasoning. Summary judgment on this issue is denied.

Plaintiff also argues that Caterpillar making him into an "L" employee was an adverse personnel action because he received fewer options as a result. It is ambiguous whether or not Plaintiff means stock options or career options. The distinction, however, is irrelevant. This argument, which does not cite to any evidence or authority, is waived as perfunctory. U.S. v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Plaintiff also argues that even if the transfer was not an adverse employment action, the change of positions was actually a demotion. Although Plaintiff admits that his compensation at the GIS position is administered at SG 30, he claims that it was an SG 29 position when Barbour offered it to him. Thus, although Plaintiff never suffered any concrete economic harm, he asserts that Caterpillar cannot undo the harm caused by this initial demotion. Caterpillar contends that Plaintiff never was demoted. In Burlington, the court found that an indefinite suspension, even if it is rescinded and the "employee eventually receive[s] backpay . . ." to be

8

an adverse employment action. Burlington, 548 U.S. at 73.  However, a never-served three day suspension was not an adverse employment action because the party did not "suffer the same economic harm."  Nagle, 554 F.3d at 1121.   Like Nagle, Plaintiff started his new job without actually having suffered a loss.  For the purposes of this statute, Plaintiff was not demoted.  The court finds that this is not a material issue for trial because an adverse employment action cannot stem from a demotion that does not exist.

Plaintiff also claims that Barbour's initial offer of the GIS position constituted an adverse employment action because she threatened to fire him if he did not take the position.  Caterpillar asserts that Barbour never gave Plaintiff an ultimatum, and Heller told Plaintiff at the meeting that he had a choice in the matter.  In a Title VII retaliation case, the Court concluded, without explanation, that the plaintiff suffered an adverse employment action "when [he] was asked to either accept a lower position at another branch or resign." Dorsey v. Morgan Stanley, 507 F.3d 624, 627-28 (7th Cir. 2006).  Plaintiff offers two documents and his formal declaration in support of his contention that Barbour threatened to terminate him unless he accepted the IT position.  See Pl's Decl. PE-X-AAX; Pl's Decl. Ex. P-EX-L.  This evidence presents issues of material fact precluding the Court from granting summary judgment.  See Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989) ("A party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture. 'Supporting and opposing affidavits shall be made on personal knowledge.") (citing Fed. R. Civ. P. 56(e)).

**Plaintiff's Sarbanes-Oxley Stock Claim**

In his Complaint, Plaintiff alleges that Caterpillar retaliated against him by withholding stock options in 2007 and 2008.  Caterpillar asserts, and Plaintiff does not dispute, that stock option awards are based on a pre-set formula and that market changes explain why Plaintiff's awards varied so significantly.  Stock option awards at Caterpillar are based on three factors: 1) the standard Black-Scholes equity award 2) a formula adjustment based on performance and potential ratings and 3) a division adjustment factor that keeps all of the awards within a set

amount. A lower Caterpillar stock price in 2009 meant that Plaintiff received more stock options than during his previous two years and that the value of those stocks was significantly less. Two other employees with the same rankings as Plaintiff received the same award. In his response, Plaintiff does not deny Caterpillar's assertions. Consequently, since Plaintiff does not present any evidence to establish that the fewer stock options he received in 2007 and 2008 were the result of retaliation as opposed to changes in the stock market, this claim cannot survive summary judgment.

### Plaintiff's Claim under the Illinois Whistleblower Act

The Illinois Whistleblower Act prohibits an employer from retaliating against an employee "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation. . . ." 740 ILCS 174/20. Under the Illinois Whistleblower Act, an action can be retaliatory "if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1. The parallels between this definition and the Burlington standard suggest that Whistleblower retaliation is defined in a similar way to Title VII retaliation. Consequently, Plaintiff's claims stand and fall on the same merits. There is a material issue of fact as to whether or not Plaintiff's current employment position is the result of a materially adverse action, but Plaintiff does not present sufficient evidence to establish a material issue as to whether his 2007 and 2008 stock awards were retaliatory.

**CONCLUSION**

Plaintiff is able to present sufficient evidence to create a material issue under 18 U.S.C. § 1514(A) and 740 ILCS 174/20.  Therefore, for the reasons set forth above, Caterpillar's Motion for Summary Judgment [#28] is DENIED.

Entered this 13th day of July, 2010.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
