**E-FILED**
Tuesday, 24 May, 2011  03:54:38 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Daniel J. Schlicksup, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-CV-1208 |
| | ) | |
| Caterpillar, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff, an employee of Caterpillar, Inc. ("Caterpillar"), pursues claims against Caterpillar and some of its employees arising from alleged retaliation for Plaintiff's disclosure of practices at Caterpillar which he believed were illegal. Before the Court are two motions by Caterpillar to quash Plaintiff's subpoenas: The first motion regards a subpoena duces tecum sent to the law firm Howrey, LLP; the second motion regards  subpoenas duces tecum sent to PricewaterhouseCoopers, LLP, and Ernst & Young, LLP.

### Relevant Law

Federal Rule of Civil Procedure 45(c)(3)(A) provides in relevant part:

(A) *When Required.*  On timely motion, the issuing court must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies.

A claim that subpoenaed documents are "privileged or subject to protection as trial-preparation material must . . . described the nature of the withheld documents, . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Fed. R. Civ. P. 45(d)(2)(A)(ii); *see also* Fed. R. Civ. P. 26(b)(5)(A).  This typically means the preparation of a privilege log which identifies the withheld document, and discloses its date, author, recipients, subject matter, purpose for which it was created, and, the privilege asserted and basis therefore.[1]  *See* Hobley v. Burge, 433 F.3d 946, 947 (7th Cir. 2006)("An attorney asserting privilege must timely support that claim with a 'privilege log' which describes the nature of each document being withheld."); Miyano Machinery USA, Inc. v. MiyanoHitec Machinery, Inc., 257 F.R.D. 456, 460 (N.D. Ill. 2008).  The party asserting the privilege has the burden of demonstrating that it applies.  Valero Energy Corp. v. U.S., 569 F.3d 626, 630 (7th Cir. 2009).

The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice.  Sandra T.E. v. South Berwyn School Dist. 100, 600 F.3d 612, 618 (7th Cir. 2010).  Statements from the attorney to the client

---

[1] The documents should also be identified by Bates numbers for ease of reference, and logically organized.  *See* Heriot v. Byrne, 257 F.R.D. 645, 668 (N.D. Ill. 2009)("party asserting privilege, . . ., should organize the documents in a manner that enables an efficient and effective determination of privilege.").

are also protected "'where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client.'" <u>Miyano Machinery USA, Inc. v. MiyanoHitec Machinery, Inc.</u>, 257 F.R.D. 456, 460 (N.D. Ill. 2008)(quoted cite omitted).  "The [attorney-client] privilege belongs to the client, although an attorney may assert the privilege on the client's behalf."  <u>Sandra T.E.</u>, 600 F.3d at 618.  Its purpose is to "'encourage full disclosure and to facilitate open communication between attorneys and their clients.'" <u>U.S. v. BDO Seidman, LLP</u>, 492 F.3d 806, 815 (7th Cir. 2007)(quoted cite omitted).[2] Encouraging candor serves the "broader public interests in the observance of law and administration of justice."  <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981).  The attorney-client privilege may be waived by disclosure to third parties.  <u>Evans</u>, 231 F.R.D. at 312.

"[T]he work-product doctrine is 'distinct from and broader than the attorney-client privilege.' " <u>In re Special September 1978 Grand Jury (II)</u>, 640 F.2d 49, 62 (7th Cir.1980), *quoting* <u>U.S. v. Nobles</u>, 422 U.S. 225, 238, n. 11

---

[2]Federal common law applies to the attorney-client privilege analysis because jurisdiction if based on federal question, even though there is a supplemental state law claim.  <u>Evans v. City of Chicago</u>, 231 F.R.D. 302, 310 (N.D. Ill., 2005).  Additionally, neither party asserts that Illinois law is relevant to the analysis.  The Court therefore does not address Illinois law on the attorney-client privilege.

(1975).  Federal Rule of Civil Procedure 26(b)(3)(A) specifically protects work

product:

> Ordinarily, a party may not discover documents and tangible things
> that are prepared in anticipation of litigation or for trial by or for
> another party or its representative . . . But, subject to Rule 26(b)(4),
> those materials may be discovered if: (i) they are otherwise
> discoverable under Rule 26(b)(1); and (ii) the party shows that it
> has substantial need for the materials to prepare its case and cannot,
> without undue hardship, obtain their substantial equivalent by other
> means.

 "The work-product doctrine protects documents prepared by attorneys in

anticipation of litigation for the purpose of analyzing and preparing a client's

case."  In re Special September 1978 Grand Jury (II), 640 F.2d at 62.  "[W]e look

to whether in light of the factual context 'the document can fairly be said to have

been prepared or obtained *because* of the prospect of litigation.'"  Logan v.

Commercial Union Insurance Co., 96 F.3d 971, 976-77 (7th Cir. 1996)(quoting

Binks v. Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir.

1983)(emphasis in Binks, *quoting* 8 Wright & Miller, Fed. Practice and Procedure

§ 2024).  Documents prepared in the ordinary course of business addressing

matters which present a remote prospect of litigation are not work-product.  In

contrast, documents prepared "'*because* of the prospect of litigation'" or prepared

because of "'some articulable claim, *likely* to lead to litigation' . . . ha[s]

arisen" are work-product.  <u>Binks</u>, 709 F.2d at 1120 (emphasis in <u>Binks</u>)(internal quoted cites omitted).

The purpose of protecting work-product is to allow lawyers to "analyze and prepare their client's case free from scrutiny or interference by an adversary. . . . It also presents a litigant from 'taking a free ride on the research and thinking of his opponent's lawyer.'" <u>Hobley v. Burge</u>, 433 F.3d 946, 949 (7th Cir. 2006). Court-ordered discovery of work- product  "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

The work-product doctrine protects information prepared by an attorney, as well as information prepared by an attorney's agent for the attorney.  <u>U.S. v. Nobles</u>, 422 U.S. 225, 238-239 (1975)("It is . . . necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney . . . ."); <u>U.S. v. Smith</u>, 502 F.3d 680, 689 (7th Cir. 2007)("The work-product privilege protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case.").  Fed. R. Civ. P. 26(b)(3)(A) also extends work-product protection to materials prepared "by or for another party."  Thus, "[t]he person preparing the materials may be any representative of the client, regardless of whether the representative is acting for the lawyer."  <u>Grochocinski v. Mayer Brown Row & Maw LLP,</u>

251 F.R.D. 316, 321 (N.D. Ill. 2008), *citing* Caremark, Inc. v. Affiliated Computer Services, Inc., 195 F.R.D. 610, 615 (N.D. Ill. 2000)("[W]hether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it.").

## I.  Howrey, LLP

Howrey, LLP ("Howrey") is a law firm which has provided legal services to Caterpillar over the years, and which did some work for Caterpillar in relation to purported illegal tape recordings of meetings by Defendant Burritt (Caterpillar's Chief Financial Officer).

The subpoena to Howrey seeks three categories of information, (d/e 65-1, p.2),  but only the first category needs to be addressed.  The second category—recordings and transcripts of Caterpillar meetings—does not seek material in Howrey's possession, or at least Plaintiff does not challenge Howrey's representation that it has no responsive documents.  (d/e 65-2, Walker Aff. ¶ 6). The third category—"factual data gathered in connection with representing Caterpillar . . . at OSHA"— Plaintiff concedes seek protected work-product material.  (d/e 79, ¶ 1).

The first category demands:

Factual statement of the documents prepared for Caterpillar regarding the taping of employees by or at the direction of Dave Burritt or some other Caterpillar employee or officer.

(d/e 65-1, p.2).

Caterpillar contends that the request is "hopelessly vague and ambiguous." (d/e 85, p. 1).  Plaintiff counters that the request speaks for itself.

The Court agrees with Caterpillar that the request is ambiguous, but not hopelessly so.  The request seems to ask only for a list summarizing all the documents prepared for Caterpillar by Howrey regarding the tape recordings, something akin to a privilege log.  In the absence of clarification by Plaintiff, that is how the Court interprets the request.

In its reply, Caterpillar does identify one legal memorandum prepared by Howrey for Caterpillar regarding the alleged tapings.  Caterpillar contends that this memo is protected by the attorney-client privilege and by the work-product doctrine.  Specifically, Joseph Walker, a former partner at Howrey avers that:

> Caterpillar retained Howrey in anticipation of litigation in mid-2007. More specifically, at that time, Caterpillar retained my legal services, through Howrey, at that time to provide legal advice related to anticipated claims concerning alleged tape-recordings of business meetings at Caterpillar.

(d/e 65-2, Walker Aff. ¶ 5).  Walker further avers that the memo, provided on or about July 30, 2007:

> set forth legal analysis and advice and findings in connection with its investigation of complaints and threatened claims concerning alleged tape recordings of meetings at Caterpillar (the "Memorandum").  The Memorandum is conspicuously labeled as privileged and confidential attorney-client communication and attorney work product.  In addition, the Memorandum was provided to Caterpillar's in-house counsel on a confidential basis.

(d/e 85-1, Walker Supp. Aff. ¶ 3).

Plaintiff maintains that the attorney-client privilege and work-product doctrine do not apply because Howrey was hired to conduct what amounted to a routine in-house investigation of the recordings.  To support this argument, Plaintiff points to the recusal of Caterpillar's Director of Office Business Practices regarding the investigation.  In Plaintiff's view, Howrey was only hired to do what the Director would have done absent her recusal—a "'routine investigation of a possibly resistable claim.'" Binks Mfg. Co. v. National Presto Industries, Inc., 709 F.2d 1109, 1119 (7th Cir. 1983)(quoted cite omitted)(letters prepared by associate in-house counsel to chief in-house counsel and production manager were not work product because they were not prepared because of prospect of litigation).

The classification of Howrey's work as an "investigation" does not necessarily mean that the attorney-client privilege or work-product doctrine do not apply.  "[F]actual investigations performed by attorneys *as attorneys* fall comfortably within the protection of the attorney-client privilege." *See* Sandra T.E., 600 F.3d at 619, *citing*  Upjohn Co. v. United States, 449 U.S. 383, 394-99 (1981)(emphasis in Sandra T.E.).  Additionally, "work-product protection applies to attorney-led investigations when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Id., *quoting* Logan v. Commercial Union Ins. Co., 96 F.3d 971, 976-77 (7th Cir. 1996).

The Howrey memo was prepared in or around July 2007.  According to the OSHA complaint attached to the Complaint in this case, Plaintiff discovered sometime in 2007 that Burritt was tape recording meetings.  (d/e 1, p. 14). Plaintiff reported this to Caterpillar's Office of Business Practices and Office of the General Counsel, and thereafter the issue was referred to outside counsel, presumably Howrey.  (d/e 1, p. 14-15).  The Director of Office of Business Practices recused herself because she had previously given Burritt a copy of the Illinois eavesdropping statute and had apparently given him advice on the matter. (d/e 79-1, Snowden Dep. pp. 57-64).  Plaintiff did not file his OSHA claim until November, 2008, and did not file this case until June, 2009.

After careful review of the parties' submissions, the Court concludes that it does not have sufficient information to determine whether the attorney-client privilege or work-product doctrine applies.  These determinations are fact-intensive inquiries.  At the least, the Court needs to review the memo *in camera*, but Caterpillar has not offered it.  *See* In re Grand Jury Proceedings, 220 F.3d 568, 570-72 (7th Cir. 2000)(in camera inspection plays "important role" in determining privilege disputed, along with consideration of "totality of . . . circumstances").  Neither has Caterpillar submitted a privilege log, which would show whether Howrey prepared documents in addition to the memo.  Nor does Caterpillar specify if an engagement letter exists, which could help the Court in its analysis.

The Court accordingly defers a decision on the motion to quash the Howrey subpoena until it receives the information listed above.

## II.  PricewaterhouseCoopers, LLP

### A.  Relevant Background Allegations

Plaintiff alleges that, since 1999, he has been reporting to Defendants practices at Caterpillar which he believes violate federal law, and suffering retaliation in return.  Specifically, Plaintiff allegedly reported what he believed to be an scheme to improperly avoid over $2 billion in U.S. income tax, purportedly accomplished by shifting U.S. profits to offshore shell companies in Switzerland.  (Complaint ¶ 3; d/e 35, Schlicksup Aff. ¶¶ 39-41).  According to Plaintiff, this "Swiss Tax Structure" is also called the "Global Value Enhancement Program," among other names.  (d/e 35, Schlicksup Aff. ¶ 42).  Caterpillar refers to the project as a legitimate  "corporate restructuring of Caterpillar's international supply chains . . . in 2000 through 2004."  (d/e 69, p. 69).  Plaintiff "believes that the ongoing retaliation and the threat to fire him are part of a cover-up of at least $2,000,000,000 of taxes otherwise due and owing" and the consequent overstatement of earnings by about $1 billion.  (Complaint ¶ 3; d/e 35, Schlicksup Aff. ¶ 47).

According to Plaintiff, the Switzerland profits are returned for use by Caterpillar to the U.S. by way of a "Bermuda Tax Structure," also known as the "Luxembourg Structure" and other names.  (d/e 35, Schlicksup Aff. ¶¶ 54-55).

This allegedly involves "many shell companies with no business operations."
(d/e 35, Schlicksup Aff. ¶ 55).   Caterpillar refers to this as a legitimate
"establishment of a financing center to facilitate efficient financing of Caterpillar's
future growth throughout the world."  (d/e 69, p. 5).

Caterpillar maintains that "[b]oth transactions were planned and
implemented in a manner that could minimize Caterpillar's worldwide tax liability."
Id.  According to Caterpillar, it felt confident of its position but expected
challenges from the IRS nevertheless.  Caterpillar maintains that it is under
constant audit by the IRS, and that the IRS has examined these transactions on
Caterpillar's returns during the 2000-2006 cycles, as well as now, during a
pending audit of Caterpillar's 2007-08 tax returns.  (d/e 69, p. 6).  In contrast,
Plaintiff believes that these transactions lack any true economic or business
substance and are therefore at risk of being struck down, exposing Caterpillar to
a liability for which its tax reserves are inadequate.  (d/e 35, Schlicksup Aff.
¶ 72).

### B.  Subpoena to PricewaterhouseCoopers, LLP

PricewaterhouseCoopers, LLP ("PwC") is Caterpillar's public auditor and a
"primary architect of the Swiss Tax Structure" (a/k/a the Global Value
Enhancement program).  (d/e 35, Schlicksup Aff. ¶ 69).

The subpoena to PricewaterhouseCoopers, LLP ("PwC") seeks:

•Documents used to "market"[3] the Global Value Enhancement program to Caterpillar or Defendant Beran (Caterpillar's Tax Director and Assistant Treasurer)

•Invoices sent to the Caterpillar Tax Department in Peoria, Illinois for years 1999-2008 relating to the Global Value Enhancement program

• "Any and all memos written to provide supporting opinions for the . . . Global Value Enhancement tax structure and/or the Luxembourg/Bermuda tax structure."

•Documents "related to the audit of the tax provision on the Caterpillar Inc. financial statements for 1999 through 2010."

•Documents "related to the audit of the tax reserves on the Caterpillar Inc. financial statements for 1999 through 2010."

•Documents relating to the classification of PwC's fees charged to Caterpillar, as submitted by Sharad Jain (PwC audit partner) to PwC's national office[4]

• Correspondence with Defendant Beran and/or Burritt (Caterpillar's Chief Financial Officer) from 1999-2010 (d/e 69-1, pp. 5-6).

## C.  Analysis

Caterpillar has standing to move to quash the subpoena on grounds of

attorney-client privilege and work product doctrine, because Caterpillar is entitled

---

[3]Caterpillar objects to the term "market" to the extent the word implies that the proposed tax structures were generic, rather than targeted to Caterpillar.  (d/e 69, p. 3, n. 4).

[4]In Plaintiff's OSHA complaint, he alleged that, in 2006, he informed Defendants Burritt and Beran that PwC's fees were being improperly classified in the proxy statement as "non-audit" fees.  (d/e pp. 12-13).  Plaintiff alleges that material information was omitted in Jain's factual summary to the national office regarding the classification of the fees.

to assert its own rights in those protections.  <u>Minnesota School Boards Ass'n Ins.</u>

<u>Trust v. Employers Ins. Co.</u>, 183 F.R.D. 627, 629 (N.D. Ill. 1999)(party has

standing to object to a subpoena to third party on work-product grounds).

Caterpillar asserts that the attorney-client privilege applies because its

outside attorneys, McDermott, Will & Emery, "retained PwC and E&Y in a *Kovel*

arrangement to allow these entities to provide assistance . . . for purposes of

providing legal advice to Caterpillar."  (d/e 69, p. 2).

"[T]here is no general accountant-client privilege."  <u>Valero Energy Corp v.</u>

<u>U.S.</u>, 569 F.3d 626, 630 (7th Cir. 2009)(citation omitted).  "Accounting advice,

even if given by an attorney, is not privileged."  <u>Id.</u>  However:

> material transmitted to accountants may fall under the attorney-client
> privilege if the accountant is acting as an agent of an attorney for the
> purpose of assisting with the provision of legal advice. " '[W]hat is
> vital to the privilege is that the communication be made *in confidence*
> for the purpose of obtaining *legal* advice *from the lawyer*. If what is
> sought is not legal advice but only accounting service ... or if the
> advice sought is the accountant's rather than the lawyer's, no
> privilege exists.' "

<u>In re Grand Jury Proceedings</u>, 220 F.3d 568, 571 (7th Cir. 2001)(quoting  <u>U.S. v.</u>

<u>Brown</u>, 478 F.2d 1038, 1040 (7th Cir.1973) (quoting <u>U.S. v. Kovel</u>, 296 F.2d 918,

922 (2d Cir.1961))(emphasis in <u>Kovel</u>).  Thus, if an accountant's help is

"'necessary, or at least highly useful, for the effective consultation between the

client and the lawyer[,]" the accountant's participation does not destroy the

attorney-client privilege.  Heriot v. Byrne, 257 F.R.D. 645, 667 (N.D. Ill. 2009),
quoting Kovel, 296 F.2d at 922.

Caterpillar submits the affidavit of Attorney Lowell D. Yoder, a partner in
McDermott, Will & Emery ("McDermott") and head of McDermott's U.S. and
International Tax Group.  (d/e 69-3, p. 1, Yoder Aff. ¶ 3).  Yoder avers that
Caterpillar hired McDermott to "provide legal analysis of the federal tax
consequences, advise CAT as to litigation risks, and represent CAT in defense of
the [Global Value Enhancement tax structure] before the Internal Revenue
Service ("IRS") in administrative proceedings and litigation."  (d/e 69-3, p. 1,
Yoder Aff. ¶ 8).  Yoder avers that McDermott retained PwC to assist in this
endeavor, "in part, by gathering facts about the existing international operations
and providing information related to implementation issues."  (d/e 69-3, p. 1,
Yoder Aff. ¶ 11).  According to Yoder, PwC's work on the Global Value
Enhancement project was distinct from PwC's audit work for Caterpillar.
(d/e 69-3, p. 1, Yoder Aff. ¶ 14).  Yoder further avers his belief that the
documents created by PwC are protected by the work product doctrine (in
addition to the attorney-client privilege) because they contain "opinion and
mental impressions," and because without that protection PwC and McDermott
would not have been able to communicate fully.  (d/e 69-3, p. 1, Yoder Aff. ¶ 16).

Mr. Yoder's assessment may be correct, but the Court has no way to
independently verify it because the Court does not have a privilege log or a copy

of the documents at issue.  Determination of the work-product and privilege issues at the least requires a detailed privilege log and, likely, an *in camera*, document-by-document review of the documents withheld, a process followed in most of the cases cited by Caterpillar.  This process also ensures a complete record, to facilitate review of this Court's determination, if necessary.  *See* American Nat. Bank & Trust Co. of Chicago v. Equitable Life Assurance Society of the United States, 406 F.3d 867, 880 (7th Cir. 2005)(reversing district court's order of disclosure:  "given the manageable quantity of documents at issue, [the magistrate judge] should have simply instituted a procedure by which he would review . . . every document contested").

Further, it appears that there may be responsive documents that are not protected from disclosure.  Caterpillar has not reviewed the documents to determine exactly which ones are protected and which are not.  (d/e 69, p. 3, n. 1)("If this Court requires PwC and E&Y to produce documents . . . Caterpillar will need additional time to review the documents, make redaction, and prepare and/or assist in preparing privilege logs.").  Caterpillar seems to concede that there may be some documents which are not protected, such as the invoices, correspondence, and documents relating to the classification of fees.  (d/e 69, pp. 17, 19).  Asserting blanket protections of attorney-client and work-product doctrine do not address why the documents that are not protected have not been produced.

For the same reason, the Court does not address at this time Caterpillar's argument that its tax accrual work papers are protected work product.  The tax accrual work papers "measure the likely success of [Caterpillar's] 'uncertain tax positions,'" and are required as part of Caterpillar's financial reporting.  (d/e 69-2, p. 6, Beran Aff. ¶ 23).  They are essentially an educated guess of what Caterpillar's tax reserve should be to cover potential future tax liability, should its tax structures be successfully challenged by the IRS.  Id.  Caterpillar prepares tax accrual work papers for each year, and then forwards them to PwC, as independent auditor, so that PwC can certify Caterpillar's financial statements.  Id. ¶ 24.  PwC may also have its own work papers regarding the potential risks of litigation with the IRS.

Two Circuits have concluded that similar tax papers are not work product, but instead documents that were required to be produced in the ordinary course of business, in order to satisfy financial reporting requirements.  See U.S. v. Tetron, Inc. 577 F.3d 21, 26 (1st Cir. 2009)(tax accrual work papers not work-product protected from IRS summons); U.S. v. El Paso Co., 682 F.2d 530 (5th Cir. 1982)(tax analysis prepared to back up balance sheet estimates of litigation costs regarding tax liability was not protected work-product).  On the other hand, Caterpillar cites a District of Columbia Circuit case which rejects a categorical ruling on tax papers prepared for or during an audit, concluding that certain documents might be considered work-product, but remanding to the district court

for an *in camera* inspection.   U.S. v. Deloitte LLP, 610 F.3d 129, 135-139

(C.A.D.C. 2010); *see also* U.S. v. Roxworthy, 457 F.3d 590 (6th Cir. 2006)

(consulting firm's analysis of tax consequences of transactions qualified as work

product); U.S. v. Adlman, 134 F.3d 1194 (2d Cir. 1998)(accounting firm's memo

could be work product if prepared because of expected litigation; remanding for

determination under "because of" standard).

      In the Court's opinion, these cites only underscore the fact-intensive inquiry

at hand, and consequently the need to review the documents *in camera*, in

consideration of the context in which each document was created.  The same

goes for issues of waiver argued by the parties.

      Caterpillar also argues that the subpoena is overly broad and unduly

burdensome.  This is arguably PwC's argument to make, since PwC is the one

with the primary burden of production, not Caterpillar, and PwC has not moved to

quash.  *See* Windsor v. Martindale, 175 F.R.D. 665, 668 (D.Colo. 1997)("The

general rule is that a party has no standing to quash a subpoena served upon a

third party, except as to claims of privilege relating to the documents being

sought.").   In any event, Caterpillar's assertion that this will be a "massive"

undertaking is conclusory and unsupported.  The subpoena is limited in subject

matter and time period, and appears sufficiently particular and measured, at least in the absence of  specific demonstration otherwise.[5]

## III.  Ernst & Young, LLP

### A.  Relevant Background Allegations

In his OSHA complaint, Plaintiff alleged that Caterpillar paid more than $10 million to Ernst and Young, LLP ("E&Y") in 2005, allegedly without detailed invoices from E&Y to support the charges.  Specifically, in 2005 Defendant Beran (Caterpillar's Tax Director and Assistant Treasurer) allegedly approved payment of a large invoice from E&Y which had no supporting documentation.  During late 2005 and 2006, Plaintiff attempted to obtain supporting documentation from E&Y, but E&Y maintained that it did not keep those records.  (d/e 1, pp. 11-12). E&Y also allegedly provided services in relation to the "Bermuda Tax Structure," which Plaintiff believes was set up by Caterpillar to dodge over $2 billion in federal income tax.  (Complaint, p. 1; d/e 69-2, Beran Aff. ¶ 20).

---

[5]Caterpillar also asserts in a footnote that the subpoenas to PwC and E&Y are invalid because they were not properly served, but this argument is undeveloped and will therefore not be addressed.  *See* Kogucki v. Metropolitan Water Reclamation Dist. of Greater Chicago, 698 F.Supp.2d 1026, 1031, n. 3 (N.D. Ill. 2010).  For example, Caterpillar does not explain why it has standing to raise this particular objection, nor does it address whether E&Y or PwC waived formal service.

## B.  Subpoena to E&Y

The subpoena to E&Y seeks:

• invoices and billing documents sent to Caterpillar in 2005 and 2006

• "Any and all documents written to provide supporting opinions for the Caterpillar Inc. Luxembourg/Bermuda tax structures."

•Correspondence and communications with Defendant Beran (Caterpillar's Tax Director and Assistant Treasurer) during 2005 and 2006

## C.  Analysis

Caterpillar makes the same arguments in favor of quashing the E&Y subpoena as it does for the PwC subpoena.  The Court reaches the same conclusion.  The record is not developed enough to determine whether the attorney-client privilege or work product doctrine applies to any of these documents.  It appears that at least some of the requested documents, such as invoices and perhaps correspondence, would arguably not be subject to those protections, as Caterpillar appears to recognize.

IT IS THEREFORE ORDERED THAT:

1) By June 30, 2011, Howrey, LLP, is directed to produce to Plaintiff the documents requested in category one of Plaintiff's subpoena, with the exception of documents withheld or redacted on the basis of the attorney-client privilege or the work-product doctrine, as identified by Caterpillar.

2) By June 30, 2011, Ernst and Young, LLP, is directed to produce to Plaintiff the documents requested in Plaintiff's subpoena, with the exception of documents withheld or redacted on the basis of the attorney-client privilege or work-product doctrine, as identified by Caterpillar.

3) By June 30, 2011, PricewaterhouseCoopers, LLP,  is directed to produce to Plaintiff the documents requested in Plaintiff's subpoena, with the exception of documents withheld or redacted  on the basis of the attorney-client privilege or work-product doctrine, as identified by Caterpillar.

4)  By June 30, 2011, Caterpillar is directed to: a) file in this Court a separate, detailed privilege log setting forth the documents withheld or redacted for each subpoena; b) to file under seal the documents identified on each privilege log for the court's *in camera* inspection; and, (c) to file under seal any engagement letter between Caterpillar, Inc., and Howrey, E&Y or PwC regarding the alleged taping, Global Value Enhancement project, or Bermuda Tax Structure project.  If no engagement letters exist, Caterpillar is directed to submit an averment to that effect.

5) The clerk of court is directed to send a copy of this order to Howrey, LLP, Ernst & Young, LLP, and PricewaterhouseCoopers, LLP, at the addresses listed in the subpoenas (d/e 65-1, p. 2; d/e 69-1, pp. 2, 5).

6) The Court reserves ruling on the pending motions to quash until it receives and digests the information set forth in paragraph (4) above.  If the

Court does not receive the information, the motions will be summarily denied and production ordered.

ENTER:    May 24, 2011

_____*s/ Byron G. Cudmore*_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE