IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Daniel J. Schlicksup, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09-CV-1208 |
| ) | |
| Caterpillar, Inc., et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

On May 24, 2011, this Court entered an order deferring a ruling on the pending motions to quash subpoenas and directed Caterpillar to provide a privilege log and to file documents for an *in camera* review.

Now before the Court is Caterpillar's privilege log and documents relating to the motion to quash the subpoena to Howrey, LLP ("Howrey"), a law firm which provided legal services to Caterpillar, Inc. ("Caterpillar") over the years.[1]  This order concerns only the Howrey documents.  A separate order will enter regarding the subpoenas to Ernst & Young, LLP, and to PricewaterhouseCoopers, LLP.

---

[1] Howrey's website reports that its partners voted to dissolve the firm on March 15, 2011.  www.howrey.com. (last visited 7/11/11).

Based on a thorough review of the privilege log and documents, the Court concludes that the Howrey documents are protected by the attorney-client privilege and, in the alternative, are also protected by the work-product doctrine, with the exception of a few documents listed below.

**Analysis**

The Court assumes familiarity with its May 24, 2011 order. In short, Plaintiff's subpoena to Howrey seeks documents prepared by Howrey for Caterpillar regarding the tape recording of meetings by or at the direction of Defendant Dave Burritt, allegedly without the knowledge and consent of all the participants. Howrey moved to quash the subpoena, asserting the attorney-client privilege and the work-product doctrine. The Court concluded that it did not have enough information to resolve the motion and directed Caterpillar to file:

> a) a separate, detailed privilege log setting forth the documents withheld or redacted . . . ; b) the documents identified on each privilege log for the court's *in camera* inspection; and, c) any engagement letter between Caterpillar, Inc., and Howrey. . . . .

(d/e 93, p. 20). Caterpillar has complied with that directive.[2]

---

[2] Caterpillar's notice of compliance states that there is no engagement letter in Howrey's files. (d/e 96, p. 1).

Before turning to the documents submitted by Caterpillar, the Court notes that Caterpillar has apparently not included documents numbered 1-70. Caterpillar maintains that these were summarized in an original privilege log provided to Plaintiff last January, but that original log is not part of the court record. Since neither party has submitted a privilege log for documents 1-70, the Court does not know if documents 1-70 are different from the documents before the Court, which are numbered from 71 and up. If documents 1-70 are different than those identified in the privilege log provided to the Court, Plaintiff may file a motion to compel an *in camera* inspection of 1-70, attaching the privilege log he purportedly received last January.

As for the documents that have been submitted, the Court has reviewed all of them, many of which are duplicates or drafts of the final versions. The privilege log provided to the Court, which has also been provided to Plaintiff, is an accurate description of these documents.

As this Court stated in its prior order, the attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice. Sandra T.E. v. South Berwyn School Dist. 100,

600 F.3d 612, 618 (7th Cir. 2010). The analysis is "(1) whether 'legal advice of any kind [was sought . . . from a professional legal adviser in his capacity as such'; and (2) whether the communication was 'relat[ed] to that purpose' and 'made in confidence . . . by the client.'" Id., *quoting* United States v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997). "[T]he attorney-client privilege protects not only the attorney-client relationship in imminent or ongoing litigation but also the broader attorney-client relationship outside the litigation context." Sandra T.E., 600 F.3d at 620.

From the court's review, it is clear that the withheld documents were generated in response to Caterpillar's request to Howrey for legal advice regarding two internal complaints filed by Plaintiff: one in 2007 about alleged illegal recordings of Caterpillar meetings and fears of retaliation by Caterpillar superiors; and the second in 2008 about retaliation, harassment, and past improper or illegal conduct by Caterpillar employees.

With regard to the 2007 complaint, Howrey was retained to conduct an investigation into the allegations about the illegal recordings, to determine the legal viability of any claims based on those allegations, and to render legal advice to Caterpillar on its actions going forward. Many Caterpillar employees were interviewed during the investigation, which

culminated in a July 30, 2007 report by Howrey to Caterpillar. The report summarizes the facts found in the investigation, provides legal analysis and advice on the Illinois eavesdropping statute and possible claims thereunder, discusses concerns of retaliation and the law governing retaliation, and gives recommendations to protect against future problems. In the Court's opinion, it is plain from these documents and from the factual context that Howrey was retained to provide legal advice to Caterpillar regarding Plaintiff's 2007 complaint.

Plaintiff contends that Howrey was not retained to provide legal services, but instead to conduct an in-house, routine investigation that Caterpillar would have conducted itself but for a purported conflict of interest. However, "factual investigations performed by attorneys *as attorneys* fall comfortably within the protection of the attorney-client privilege." Sandra T.E., 600 F.3d at 619 (emphasis in original), *relying on* Upjohn v. U.S., 449 U.S. 383, 401 (1981). The investigation conducted by Howrey was performed by attorneys, as attorneys.

In Sandra T.E., facing a civil suit against the school district and criminal charges against a teacher, the school board retained a law firm to conduct an internal investigation into the school administrators' response to

allegations of a teacher's sexual abuse of students, in order to "examine whether any district employees had failed to comply with district policies or federal or state law, and [to] analyze the effectiveness of the District's existing compliance procedures." Id. at 616. The Seventh Circuit concluded that the law firm had been hired to provide legal services, which encompassed the factual investigation necessary to provide those services. Id. at 620; *see also* Lerman v. Turner, 2011 WL 62124 *6 (N.D. Ill., Magistrate Judge Soat Brown )(not reported in F.Supp.2d)(report summarizing attorney's investigation into allegations that employee had misused grant money, and interviews garnered in that investigation, were protected by attorney-client privilege). The Court held that "[b]ecause the Sidley lawyers were hired in their capacity as lawyers to provide legal services—including a factual investigation—the attorney-client privilege applies to the communications made and documents generated during that investigation." 600 F.3d at 620. The Seventh Circuit relied on Upjohn Co. v. U.S., 449 U.S. 383 (1981), in which the Supreme Court held that the attorney-client privilege protected documents generated during an investigation conducted by in-house and outside counsel into reports that foreign subsidiaries had bribed foreign officials for business. Upjohn held

that the questionnaires and interviews conducted as part of that investigation were protected by the attorney-client privilege. Similarly, the Seventh Circuit in <u>Sandra T.E.</u> concluded that the attorneys' notes and memoranda related to the investigation were protected by the attorney-client privilege.[3]

As far as the attorney-client analysis, the factual context here is similar to that in <u>Sandra T.E.</u>. Here, Caterpillar was seeking legal advice about Plaintiff's 2007 complaint and how to respond. The communications made by Caterpillar employees to Howrey attorneys in the interviews were made in order for Caterpillar to secure that legal advice.[4] As in <u>Sandra T.E.</u>, the Howrey attorneys emphasized the confidential nature of those communications: "<u>Upjohn</u> warnings" were provided to the interviewees, meaning the interviewees were warned that Howrey represented Caterpillar, not individual employees, and that the communications were confidential and privileged. *See* <u>Sandra T.E.</u>, 600 F.3d at 612.

---

[3]The documents in <u>Sandra T.E.</u> were also protected by the work-product doctrine, but litigation had already begun in that case. 600 F.3d at 618.

[4]The parties do not address whether the interviews of Kevin and Noah Giovanetto (the persons who recorded the meetings) should be subject to the attorney-client privilege. It does not appear that these two persons were Caterpillar employees. However, Plaintiff's entire argument rests on his premise that Howrey was conducting what amounted to a routine, internal investigation, not giving legal advice. As discussed above, the Court has rejected that argument.

Even if Howrey's investigation could have been conducted by in-house counsel, that does not, by itself, render unavailable the protections of the attorney-client privilege.  See Upjohn, 449 U.S. at 386 (attorney-client privilege applied to internal investigation conducted by in-house General Counsel and outside counsel);  Gingerich v. City of Elkhart Probation Dept., 273 F.R.D. 532, 543-44 (2011)(notes taken by in-house city counsel regarding investigation into alleged sexual harassment and hostile work environment were protected by work-product doctrine).  The focus is on the purpose and confidentiality of the communications, not on whether the attorney was in-house or out.  Here, the purpose of the communications was to obtain legal advice.

As an initial finding, the Court accordingly concludes that the attorney-client privilege applies to nearly all of the Howrey documents generated in response to Plaintiff's 2007 complaint.  (priv log 71-663; 889-1254).  There are a few documents in this group that are not protected. Exhibits A and C-I of the July 30, 2007 report are not work-product, nor do they reflect privileged communications.  Additionally, the disclosures to the complainants drafted by Howrey do not appear to be protected (privilege log 431-436), since they were not intended to be confidential

communications from Howrey to Caterpillar. Some of these documents were authored by Plaintiff, and he likely already has a copy of most of the others, but their production will be ordered nonetheless.

The other group of documents submitted for *in camera* review were generated in response to Plaintiff's May 1, 2008 complaint to Caterpillar executives. (priv log 437-438; 664-888). This complaint apparently dealt with alleged retaliation and harassment Plaintiff had suffered and recounted illegal conduct Plaintiff had already reported, including the alleged illegal recordings. (See Complaint, d/e 1, p. 18, ¶ m).

Like the first group of Howrey documents, it is clear from the context and from the Court's *in camera* review that Howrey was retained to provide confidential legal analysis and advice on the issues raised by Plaintiff in his May 1, 2008 complaint. The documents analyze the legal viability of claims under the Illinois eavesdropping statutes, the possibility of claims under the Sarbanes-Oxley Act, and other legal analysis into Plaintiff's charges of illegal and improper actions at Caterpillar. The Court accordingly concludes that the attorney-client privilege applies to these documents as well.

In addition, the Court alternatively finds that both groups of documents are also protected by the work-product doctrine. As the Court set forth in its May 24th order:

> "The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." In re Special September 1978 Grand Jury (II), 640 F.2d at 62. "[W]e look to whether in light of the factual context 'the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation.'" Logan v. Commercial Union Insurance Co., 96 F.3d 971, 976-77 (7th Cir. 1996)(quoting Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983)(emphasis in Binks, *quoting* 8 Wright & Miller, Fed. Practice and Procedure § 2024). Documents prepared in the ordinary course of business addressing matters which present a remote prospect of litigation are not work-product. In contrast, documents prepared "'*because* of the prospect of litigation'" or prepared because of "'some articulable claim, *likely* to lead to litigation' . . . ha[s] arisen" are work-product. Binks, 709 F.2d at 1120 (emphasis in Binks)(internal quoted cites omitted).

It is true that Plaintiff did not file his complaint with the Occupational Safety and Health Administration until November 2008, nearly 16 months after Howrey's 2007 report. "The mere fact that litigation does eventually ensue does not, by itself, cloak materials . . . with the work product privilege." Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983); *see also* Musa-Mauremi v. Florists' Transworld Delivery, Inc., 270 F.R.D. 312 (N.D. Ill. 2010)(no work-product protection

for documents drafted after filing of internal harassment complaint by employee where no EEOC charge yet filed, and where documents were generated as routine response to employee complaint).

However, the Court believes that Howrey's work "can fairly be said to have been prepared or obtained because of the prospect of litigation." Howrey's work went above and beyond a routine internal investigation. It was an in-depth legal analysis of Caterpillar's legal exposure to claims of illegal eavesdropping, retaliation and other alleged illegal action raised by Plaintiff in his internal complaints. The interviews, research, memoranda and reports focus on determining the existence and viability of those potential legal claims and defenses.

Plaintiff cites Binks Mfg. Co. v. National Presto Indust., Inc., 709 F.2d 1109 (7th Cir. 1983), a case in which in-house counsel prepared summaries from his investigation of allegedly defective equipment purchased from another company. The documents at issue included a letter to the company's General Counsel summarizing the attorney's conversations with corporate officers and detailing the equipment's problems, and a document to the company's production manager opining on the allocation of responsibility for the equipment failures. 709 F.2d at 1113, 1118. The

seller of the equipment ultimately sued the company for the balance due under the contract.

The Seventh Circuit in <u>Binks</u> upheld the ordered production of the in-house documents, agreeing that they were not protected by the work-product doctrine because of the factual context in which they were created. Specifically, though there had been a volley of letters between the companies, none of the letters had suggested that litigation was imminent, and the in-house attorney had been focusing at that time on gathering facts to correct the problem, not on "prepar[ing] for litigation." 709 F.2d at 1120. The Seventh Circuit also noted that, in any event, admission of the letters was not reversible error.

In contrast to <u>Binks</u>, here the factual context and documents prepared by Howrey demonstrate that Howrey's work was done in anticipation of litigation. Both matters were referred to Howrey because of the prospect of litigation by Plaintiff, as is clear from Plaintiff's internal complaints and from the documents themselves. Howrey's work was conducted with an eye toward determining the factual merit and legal viability of those claims, and toward protecting Caterpillar from those

claims.[5] The Court therefore concludes that, as an additional and alternative ground, the documents submitted for *in camera* review are protected by the work-product doctrine.

IT IS THEREFORE ORDERED THAT Defendant Caterpillar's motion to quash Plaintiff's subpoena to Howrey, LLP, is granted (d/e 64) except for the following documents: 1) Exhibits A and C-I of the July 30, 2007 report to Caterpillar (priv 477); and 2) documents marked as priv 431-436. Caterpillar is directed to produce said documents to Plaintiff by July 22, 2011.

Original documents reviewed *in camera* are directed to be filed in hard copy format under SEAL "Court's eyes only" with the Clerk.

ENTER: July 13, 2011

_____*s/ Byron G. Cudmore*_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE

---

[5]Work-product protection may yield if a party demonstrates a substantial need for the materials and cannot obtain them by other means without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiff makes no argument that this exception applies.