**E-FILED**
Friday, 19 August, 2011  11:24:38 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Daniel J. Schlicksup, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-CV-1208 |
| | ) | |
| Caterpillar, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

On May 24, 2011, this Court entered an order deferring a ruling on Defendant Caterpillar, Inc.'s motions to quash subpoenas directed to Howrey, LLP, Ernst and Young, LLP, and PricewaterhouseCoopers, LLP. Caterpillar subsequently filed privilege logs and the documents it seeks to withhold for an *in camera* review.  On July 13, 2011, this Court ruled on Caterpillar's motion to quash the subpoena to Howrey, LLP.

Now before the Court are Caterpillar's privilege log and documents relating to the motion to quash the subpoena to Ernst and Young, LLP ("E&Y").  For the reasons below, the motion will be granted in part and denied in part.  The Court will rule on the motion to quash the PricewaterhouseCoopers' documents in a separate order.

**Background**

The Court assumes familiarity with its May 24, 2011 order.  As Plaintiff's claims relate to the subpoena to E&Y, Plaintiff alleges that Caterpillar paid E&Y  large sums without required supporting documentation.  Plaintiff also alleges that E&Y provided services in relation to Caterpillar's "Luxembourg/Bermuda Tax Structure" (also known as the "Financing Center Transaction"), which Plaintiff maintains was part of an unlawful scheme to avoid over $2 billion in federal income tax.

Plaintiff's subpoena to E&Y seeks:

• invoices and billing documents sent to Caterpillar in 2005 and 2006

• "Any and all documents written to provide supporting opinions for the Caterpillar Inc. Luxembourg/Bermuda tax structures."

•Correspondence and communications with Defendant Beran (Caterpillar's Tax Director and Assistant Treasurer) during 2005 and 2006

(d/e 69-1, p. 2).

On May 24, 2011, the Court directed Caterpillar to provide:

a) a separate, detailed privilege log setting forth the documents withheld or redacted . . . ; b) the documents identified on each privilege log for the court's *in camera* inspection; and, (c) any engagement letter between Caterpillar, Inc., and . . . E&Y . . . .

(d/e 93, p. 20).  Caterpillar has complied with that directive and this Court has conducted an *in camera* review of each E&Y document submitted.

A general description of the financing center transaction provides helpful context.  Defendant Beran, Caterpillar's Tax Director and Assistant Treasurer, avers that, "[b]ecause of the accelerating growth of CAT's international operations, [he] recognized that it would be necessary to put in place a financing center ("Financing Center Transaction") that would facilitate the ability to efficiently finance this future growth throughout the world."  (Beran Aff. ¶ 15, d/e 69-2)."  He avers that time was of the essence in order to maximize tax savings under a "'one time' repatriation opportunity granted by Congress in the enactment of Internal Revenue Code Section 965."  Id.

Based on the Court's review of the documents, in broad terms the stated purpose of the financing center transaction was to efficiently finance foreign affiliates and foreign acquisitions and to achieve tax savings. Accomplishing the transaction required a series of many separate transactions in several different countries, which in turn required extensive and complex planning.   The Court will not go into further detail about this complicated transaction because it does not wish to divulge potential

confidential business information.   Plaintiff maintains that the real purpose of the transaction was to illegally avoid U.S. taxes, but that dispute is not material to the motion to quash.

### Applicable Law

Caterpillar's privilege log asserts that the documents withheld are protected by the attorney-client privilege, the work-product doctrine, and/or the "tax advisor client communication" privilege.  Caterpillar did not assert a "tax advisor" privilege in its motion to quash and has not briefed the contours of this privilege.[1]  Accordingly, the Court addresses only the attorney-client privilege and work-product doctrine.

The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice.  Sandra T.E. v. South Berwyn School Dist. 100, 600 F.3d 612, 618 (7th Cir. 2010).  Statements from the attorney to the client are also protected "'where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client.'" Miyano Machinery USA, Inc. v. MiyanoHitec

---

[1]There is a statutory tax advisor privilege, but that applies in civil tax matters before the IRS or brought by the U.S.  26 U.S.C. Section 7525.

Machinery, Inc., 257 F.R.D. 456, 460 (N.D. Ill. 2008)(quoted cite omitted).

The party asserting the privilege has the burden of demonstrating that it

applies.  Valero Energy Corp. v. U.S., 569 F.3d 626, 630 (7th Cir. 2009).

The attorney-client privilege "is in derogation of the search for the truth and

therefore, must be strictly confined."  In re Grand Jury Proceedings, 220

F.3d 568, 571 (7th Cir. 2000).  The analysis is "highly fact specific,"

requiring a "document-by-document" review and a consideration of the

"'totality of the circumstances.'"  Id. at 571, 572 (quoted cite omitted).

Confidential communications by non-lawyers for the purpose of

assisting the lawyers to provide legal advice are also protected by the

attorney-client privilege.  *See* U.S. v. Kovel, 296 F.2d 918, 922 (2d Cir.

1961)(accountant's assistance was protected by the attorney-client

privilege where it enabled "effective consultation between the client and the

lawyer").  "'[W]hat is vital to the privilege is that the communication be

made *in confidence* for the purpose of obtaining *legal* advice *from the*

*lawyer*. If what is sought is not legal advice but only accounting service ...

or if the advice sought is the accountant's rather than the lawyer's, no

privilege exists.' "  In re Grand Jury Proceedings, 220 F.3d at 571, *quoting*

U.S. v. Brown, 478 F.2d 1038, 1040 (7th Cir.1973), *quoting* U.S. v. Kovel,

296 F.2d 918, 922 (2d Cir.1961))(emphasis in <u>Kovel</u>).  Thus, the attorney-

client privilege applies if a consultant's communications were "'necessary,

or at least highly useful, for the effective consultation between the client

and the lawyer.'"  <u>Heriot v. Byrne</u>, 257 F.R.D. 645, 667 (N.D. Ill.

2009)(referring to accountant's services), *quoting* <u>Kovel</u>, 296 F.2d at 922;

*see also* <u>Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.</u>, 244

F.R.D. 412,  (N.D. Ill. 2006)("'the complexities of modern existence prevent

attorneys from effectively handling clients' affairs without the help of others,

[and] the attorney-client privilege must include all persons who act as the

attorney's agents.'")(quoted cited omitted).

　　　The work-product doctrine is separate from the attorney-client

privilege, protecting "documents and tangible things that are prepared in

anticipation of litigation or for trial by or for another party or its

representative . . . ."  Fed. R. Civ. P. 26(b)(3)(A).  "The work-product

doctrine protects documents prepared by attorneys in anticipation of

litigation for the purpose of analyzing and preparing a client's case."

<u>Sandra T.E.</u>, 600 F.3d at 618.  "[W]e look to whether in light of the factual

context 'the document can fairly be said to have been prepared or obtained

*because* of the prospect of litigation.'" <u>Logan v. Commercial Union</u>

Insurance Co., 96 F.3d 971, 976-77 (7th Cir. 1996),*quoting* Binks v. Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1119 (7th Cir. 1983)(emphasis in Binks, *quoting* 8 Wright & Miller, Fed. Practice and Procedure § 2024). Documents prepared in the ordinary course of business addressing matters which present a remote prospect of litigation are not work-product. In contrast, documents prepared "'*because* of the prospect of litigation'" or prepared because "'some articulable claim, *likely* to lead to litigation' . . . ha[s] arisen" are work-product. Binks, 709 F.2d at 1120 (emphasis in Binks)(internal quoted cites omitted). Fed. R. Civ. P. 26(b)(3)(A) also extends work-product protection to materials prepared "by or for another party." Thus, "[t]he person preparing the materials may be any representative of the client, regardless of whether the representative is acting for the lawyer." Grochocinski v. Mayer Brown Row & Maw LLP, 251 F.R.D. 316, 321 (N.D. Ill. 2008), *citing* Caremark, Inc. v. Affiliated Computer Services, Inc., 195 F.R.D. 610, 615 (N.D. Ill. 2000)("[W]hether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it.").

## Analysis

**I.    The work-product doctrine does not apply because the documents were not prepared or obtained because of the prospect of litigation.**

Caterpillar asserts that it hired the law firm McDermott, Will & Emery ("MWE") to "provide a legal analysis of the federal tax consequences, advise CAT as to the potential litigation risks . . ., and defend the transaction in IRS administrative proceedings and litigation."  (Beran Aff. ¶ 18, d/e 69-2).  Beran "was of the view that the Financing Center Transaction, . . ., would be closely scrutinized by the IRS and be challenged during IRS audits, and result in litigation, albeit litigation to which CAT would ultimately prevail."  (Beran Aff. ¶ 19, d/e 69-2).  Beran avers that he expected litigation because the IRS examines all of Caterpillar's returns pursuant to the Coordinated Examination Program and the transaction (which significantly reduced tax liability) would be disclosed on the return.  He avers that "related-party transactions had been the subject of considerable litigation between the IRS and other large corporate taxpayers like CAT."  (Beran Aff. ¶ 9, d/e 69-2).

Lowell Yoder, an MWE partner and head of its international tax group, offers similar averments.  He avers that McDermott has been

outside tax counsel to Caterpillar for over 50 years and frequently provides

legal advice to Caterpillar's tax department, as well as defending Caterpillar

in tax disputes.  (Yoder Aff. ¶ 5, d/e 69-3).  Yoder further avers that:

> . . . CAT requested that McDermott assist CAT and its
> subsidiaries in preparing for anticipated litigation with the IRS
> arising from the tax issues associated with the Financing
> Center Transaction. . . .
>
>          *            *            *
>
> At all relevant times during McDermott's work on the Financing
> Center Transaction, it was McDermott's belief that the this [sic]
> transaction would be closely scrutinized by the IRS, even
> though it was lawful. . . . McDermott knew that the IRS would
> be aware of the transaction, since CAT intended to (and did)
> disclose the Financing Center Transaction in CAT's federal
> income tax reporting.  In addition to the financing efficiencies
> which would result, McDermott was aware that putting in place
> a financing center could also result in substantial federal tax
> savings.
>
>          *            *            *
>
> . . . based on the assumption regarding litigation . . .
> McDermott retained tax advisors from E&Y as well [as] some
> assistance from PwC to assist McDermott in (1) conducting its
> legal analysis of the federal tax consequences . . . , (2)
> determining litigation risks, and (3) assisting in the defense.

(Yoder Aff. ¶¶ 17, 19, 21, d/e 69-3).  Both Yoder and Beran conclude that

the documents "(a) would not have been generated but for the anticipated

litigation with the IRS, and (b) would not have been generated with the

nature of the content they contained and the subjects they addressed but for the anticipated litigation.  These documents were not prepared in the ordinary course of CAT's business."  (Beran Aff. ¶ 22, d/e 69-2; *see also* Yoder Aff. ¶ 24, d/e 69-3).  E&Y's privilege log asserts repeatedly that the documents were "prepared by Ernst & Young at the request of McDermott Will & Emery in anticipation of litigation with the IRS."

In the Court's opinion, Caterpillar's expectation that the transaction would be closely scrutinized by the IRS does not demonstrate that a prospect of litigation existed when the documents were created.  The possibility that the IRS may decide at some point to challenge the transaction in court is simply too remote on this record.  The audit of Caterpillar's returns is in the ordinary course of business for Caterpillar—all of its returns are audited.  As the Seventh Circuit stated in In re Special September 1978 Grand Jury (II), 640 F.2d 49, 65 (7th Cir. 1980), which involved an IRS subpoena for MWE's work related to a client's tax filings, "[a]lthough litigation could ultimately have ensued in connection with the . . . tax filings, a remote prospect of future litigation is not sufficient to invoke the work product doctrine."[2]  *See also* United States of America v.

_____

[2]The Seventh Circuit also reasoned that, "[a]t most, the materials were prepared with an eye toward a possible administrative proceeding with the IRS," and concluded that was not enough to warrant work-product protection.  640 F.2d at 65.

Telephone and Data Systems, Inc., 2002 WL 2023767 * 3-4 (W.D. Wis. 2002)(not reported in F.Supp.2d)(documents purportedly prepared in anticipation of audit pursuant to Coordinated Examination Program were not subject to work-product protection because the possibility of litigation was too remote).

Even if Caterpillar had demonstrated a sufficient prospect of litigation, the documents reviewed by the Court were not prepared because of that prospect.  They were prepared to present and implement a complex business restructuring plan in order to achieve financial efficiencies and tax savings.  These documents would have been prepared with or without the specter of an IRS challenge.  For example, the presentations, the step plans, agendas, list of action items, and the legal corporate documents necessary to implement the plan were all necessary to achieve the transaction, not to defend against a possible IRS challenge.  They would have been drafted regardless.  It is true that some of the documents give tax advice and identify legal issues, but applicable laws have to be identified and followed in order to achieve any business plan.  Accepting Caterpillar's view would result in work-product protection for the

implementation of business decisions that have little or nothing to do with defending against legal claims.[3]

Thus the Court concludes that Caterpillar has not borne its burden of demonstrating that the work-product doctrine applies to any of the E&Y documents submitted for an *in camera* review, because it has not demonstrated that the documents were prepared "*because* of the prospect of litigation" or prepared because of an "articulable claim, *likely* to lead to litigation."  The analysis thus stops for the documents for which the privilege log asserts only the work-product doctrine, such as the invoices. (EY-CAT-INV-00039-748; EY-CAT-INV-000 750-758).  The bulk of the privilege logs, however, also assert the attorney-client privilege, which is addressed below.

---

[3]Caterpillar cites U.S. v. Adlman, 134 F.3d 1194 (2d Cir. 1998), in which the Second Circuit held that "a document created because of anticipated litigation . . . does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation . . . ."  As discussed above, Caterpillar has not carried its burden of showing that a prospect of litigation existed or that the documents were prepared because of such prospect. Nor has Caterpillar explained how the documents would have been prepared differently absent its fear of an IRS challenge.  The other cases it cites, U.S. v. Roxworthy, 457 F.3d 590, 594 (6th Cir. 2006) and U.S. v. ChevronTexaco Corp., 241 F.Supp.2d 1065 (N.D. Cal. 2002), are distinguishable on the same basis.

**II.     The attorney-client privilege.**

Some of the E&Y *in camera* documents do meet the requirements of

the attorney-client privilege and they will be protected from disclosure.

They are communications from or to attorneys for the purpose of obtaining

or providing legal advice that appears to be confidential.  These include

legal analysis by attorneys[4] of tax law and other legal issues, drafts of and

comments on drafts of legal documents necessary to implement the plan,[5]

and information provided to the attorneys necessary to draft those

documents.  Though many people were involved in receiving these

communications, it does not appear that any waiver occurred.  Many

people were necessarily involved because of the complexity and scope of

the transactions.  The Court notes also that Plaintiff was a party to and

authored some of these protected documents, but that fact does not negate

the attorney-client privilege, which belongs to Caterpillar.

_____

[4]Some of attorneys were in-house or from law firms other than MWE.

[5]Not all the drafts entail confidential communications.  Some appear to be stock corporate forms with no comments or changes.  These drafts do not appear to convey any legal advice.  *See* Musa-Muaremi v. FTD, Inc., 270 F.R.D. 312, 316 (2010)("drafts of a contract, which, when prepared by counsel or containing comments by counsel that communicate legal advice, can be protected by attorney-client privilege.").  Additionally, some of the documents are executed agreements, which would not contain confidential legal advice.

However, many of the documents do not meet the requirements of the attorney-client privilege.  For example, in order for the attorney-client privilege to apply, the advice must be legal advice, not business advice. Burden-Meeks v. Welch, 319 F.3d 897, 899 (7th Cir. 2003)(the attorney-client privilege "extends . . . to communications about legal subjects, and it is hard to see why a business evaluation meets that description."); In re Carl Walsh, 623 F.2d 489, 494 (7th Cir. 1980)("Business or other advice is not privileged, and should be distinguished from professional legal services."); *see also* Musa-Muaremi v. Florists' Transworld Delivery, Inc., 270 F.R.D. 312, 316 (N.D. Ill. 2010)("The privilege does not, however, protect business decision advice, even when that business advice is rendered by an attorney or an attorney is one of those participating in the business decision."); Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993)("[T]he privilege will not apply where the legal advice is incidental to business advice.");  Wychocki v. Franciscan Sisters of Chicago, 2011 WL 2446426 (N.D. Ill. 2011)(not reported)("the attorney-client privilege is restricted to confidential *legal* advice; financial or business advice is not protected by the privilege.")(emphasis in original)(applying Illinois law but also citing In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000)).  However, legal advice does include

advice regarding compliance with the law, including tax laws.  *See* Upjohn
Co. v. U.S., 449 U.S. 383, 394-95 (1981).

Many of the documents at issue involve devising, presenting, and
implementing the business transaction, not the providing confidential legal
advice.  Legal advice was of course necessary to implement parts of the
plan, but that does not protect the entire transaction under the attorney-
client privilege.[6]  For example, the engagement letters do not fall under the
attorney-client privilege.  These letters  describe the work that E&Y will
perform, the terms and conditions of that performance, and the fee paid,
among other non-privileged issues.  The transaction at issue is discussed
only generally, as a prelude to the scope of E&Y's work, and essentially
reveals no more than what Caterpillar already revealed in its motion to
quash.  The scope of the work to be performed by E&Y is also described in
broad, general terms.  Much of the content appears to be boilerplate
language E&Y likely uses for all its clients.

Similarly, legal advice is not conveyed in the documents outlining the
business plan and its objectives; breaking the plan down into parts and

_____

[6]Some documents might contain confidential business information, but a
protective order such as the one in place is the remedy, not the attorney-client privilege.
(d/e 57, Agreed Protective Order).

assigning responsibilities; setting agendas and action items; gathering financial information; establishing micro and macro step plans; determining the fair market value of affiliates; conducting feasibility studies; setting forth spreadsheets, organizational charts, financial analysis and forecasts; or conducting due diligence to determine the business wisdom of acquisitions.

Portions of some documents do provide advice on complying with applicable laws, but that advice is given by non-lawyers.  "The attorney-client privilege protects communications made in confidence by a client and a client's employees to an *attorney*, acting as an attorney, for the purpose of obtaining legal advice."  Sandra T.E., 600 F.3d at 618; In re Grand Jury Proceedings, 220 F.3d at 571 (7th Cir. 2001)("'[W]hat is vital to the privilege is that the communication be made . . . for the purpose of obtaining *legal* advice *from the lawyer*. . . . [I]f the advice sought is the accountant's rather than the lawyer's, no privilege exists.' ")(quoted cites omitted); *see also* United States of America v. Telephone and Data Systems, Inc., 2002 WL 2023767 * 3 (W.D. Wis. 2002)(not reported in F.Supp.2d)(attorney-client privilege did not apply to Arthur Anderson letter, even though letter was similar to law firm's letter which did enjoy attorney-client privilege protection).  The documents do not back up Caterpillar's argument that they "necessarily reflect legal analysis and opinions of

attorneys from within Caterpillar and from McDermott that are protected by the attorney-client privilege."  (d/e 69, p. 19).

Caterpillar contends that the attorney-client privilege applies, even to the documents created by non-lawyers, because E&Y was acting as MWE's agent in a "*Kovel"* arrangement "to provide assistance to the outside legal counsel for purposes of providing legal advice to Caterpillar." (d/e 69, p. 2).  The documents submitted, though, do not support that conclusion.  Caterpillar does not adequately explain how these documents helped any lawyers provide legal advice, determine litigation risks or assist in the defense of any litigation.  There are some documents containing legal advice from attorneys, but the Court does not see how that advice necessarily relied on E&Y's assistance.  Rather, the documents show that E&Y and the law firms played separate, but coordinated roles in implementing the plan.  E&Y played a primary role in devising and presenting the business idea to Caterpillar, as well as developing, implementing and overseeing that plan.  MWE and other law firms played primary roles in providing legal advice and also in coordinating and implementing the plan, but E&Y's involvement was not necessary to the rendering of that legal advice.  *Cf.* Lawrence E. Jaffe Pension Plan, 244 F.R.D. 412, 420 (N.D. Ill. 2006)(attorney-client privilege applied where E&Y

retained to "conduct complex quantitative analysis and extensive information-gathering that was beyond" in-house counsel's resources and necessary to enable in-house counsel to provide legal advice on pending litigation).

## III.   Conclusion

The Court concludes that Caterpillar has not met its burden of demonstrating the documents were prepared because of the prospect of litigation, and thus the work-product doctrine does not apply.  The attorney-client privilege does protect some of the documents, which are identified below, but not the remainder.  By and large, these documents were created to make and implement a business decision, not confidential communications relating to legal advice from an attorney.

IT IS THEREFORE ORDERED THAT:

1)  Defendant Caterpillar's motion to quash Plaintiff's subpoena to Ernst and Young, LLP, is granted in part and denied in part (d/e 68).  The motion is GRANTED ONLY AS TO THE FOLLOWING DOCUMENTS which the Court finds are protected by the attorney-client privilege:

EY-CAT:   568, 576-578, 579-595, 629, 686-732, 733-736, 861-879, 886-900, 925-937, 968-975, 979-980, 981-996, 1015-1021, 1026-1028, 1029-1031, 1032-1034, 1037-1045, 1052-1056, 1150-1153, 1165-1180, 1181-1184, 1191-

                        1265, 1277-1289, 1290-1335, 1341-1362, 1365-1377,
                        1380-1586[7]

EY-CAT-MHOW-EM:   4, 9-35

EY-CAT-SHUY-EM:   14-18, 22-25, 29-35, 37-55, 62-78, 81-85, 87-
                        95, 98-102, 106-115, 116-129, 130-171, 191-
                        197, 212-218, 233-34, 235-271, 273, 291-292,
                        296-313, 316-322, 326-341, 344-357, 361-
                        370, 376-78, 1963-1971, 1974-1982, 1987-
                        1995, 2163-2170, 2175-2182, 2848, 2853-
                        2881, 2886-2912, 2913, 2919-2945, 3033-
                        3042, 3043-3112, 3279-3286, 3299-3325

EY-CAT-STHO-EM:   52-74, 77-81, 83-96, 100-114, 117-118, 121-
                        128, 130-162, 165-171, 173-175, 179-181,
                        183-192, 198-200, 734, 938-940, 1430, 1439-
                        1448

        2) Except for the documents identified in paragraph (1) above, the

motion to quash is denied as to the E&Y documents.  By September 2,

2011, Caterpillar is directed to produce to Plaintiff all of the E&Y documents

submitted to this Court for an *in camera* inspection, except those identified

in paragraph (1) above.

        3) The clerk is directed to keep motion #68 as pending on the docket

as it relates to the motion to quash the subpoena to Pricewaterhouse-

---

        [7]This group contains some documents that are not protected by the attorney-
client privilege, but they are duplicates of documents which have been ordered to be
produced.  For ease of reference, the entire group (1380-1586) is cited, since Plaintiff
will otherwise be receiving the nonprivileged documents.

Coopers.  The PricewaterhouseCoopers documents will be addressed in a separate order.

ENTER:    August 19, 2011

_____*s/ Byron G. Cudmore*_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE